IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAUNTE WALKER, Individually | § | |
| and as mother of Kyle Dail Jr and | § | |
| Kymari Dail minor heirs of the | § | |
| Estate of KYLE DAIL SR., deceased, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:23-CV-0391-D |
| VS. | § | |
| | § | |
| CITY OF DALLAS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Shaunte Walker ("Walker") brings this action individually and as mother of

Kyle Dail Jr. ("Kyle") and Kymari Dail ("Kymari"), the minor heirs of the estate of Kyle

Dail Sr. ("Dail").[1]  Walker sues the City of Dallas ("City"), the Dallas Police Department

("DPD"), and three individual DPD officers employed by the City, alleging claims under 42

U.S.C. § 1983 and state law based on the officers' alleged use of excessive and illegal force

that resulted in Dail's death.  The City and the individual officers move under Fed. R. Civ.

P. 12(b)(6) to dismiss for failure to state a claim on which relief can be granted.  For the

reasons that follow, the court grants the motion as to all of Walker's claims other than her

§ 1983 claim, brought in a representative capacity, against the individual officers, in their

---

[1]Normally, a minor's initials would be used in place of his name.  *See* Fed. R. Civ. P.
5.2(a)(3).  But plaintiffs have "waive[d] the protection of Rule 5.2(a) as to [their] own
information by filing it without redaction and not under seal." Rule 5.2(h).  The court will
therefore refer to the minors by their names instead of their initials.

individual capacities, based on the constitutional injuries that Dail suffered prior to his death, and grants Walker leave to replead.

I

On July 27, 2022 undercover DPD officers allegedly witnessed Dail making hand-to-hand drug sales in the parking lot of a convenience store ("Food Mart") before departing in a vehicle.[2]  The officers followed Dail and, after witnessing a traffic violation, attempted to initiate a traffic stop, but the vehicle Dail was riding in did not stop.  Although the officers gave chase, they ultimately lost track of Dail.

Around 11:35 p.m. defendants DPD Officers Thomas Hoffman ("Officer Hoffman"), Noah Hemm ("Hemm"), and Michael Piering ("Piering") (collectively, the "DPD Officers") witnessed Dail's vehicle return to the Food Mart and Dail enter the store.  The DPD Officers followed Dail into the Food Mart and approached him from behind to take him into custody. The DPD Officers did not announce themselves, they repeatedly rammed Dail's head into a soft drink dispenser, and they sprayed him with mace.  Dail attempted to comply with the DPD Officers' commands, but one officer began punching him unnecessarily.   As the struggle continued, Dail disarmed himself by tossing his firearm to the ground.  Several seconds later, Officer Hoffman shot Dail, who was unarmed.  Dail was transported to a local hospital in critical condition and later died as a result of the gunshot wound he sustained at

---

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to Walker, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Walker's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also infra* § II.

the Food Mart.

In February 2023 Walker filed the instant lawsuit, individually and as the mother of Kyle and Kymari, the minor heirs of Dail's estate. Walker brings claims against the DPD Officers under Texas common law for assault; under 42 U.S.C. § 1983 for the violation of Dail's Fourth and Fourteenth Amendment rights; and under the Texas Survival Act, Tex. Civ. Prac. & Rem. Code Ann. § 71.021 (West 2008). She also asserts a claim under 42 U.S.C. § 1983 against the City.

On August 25, 2023 the City and the DPD Officers filed the instant motion to dismiss. Walker's response to the motion was due on September 15, 2023. *See* N.D. Tex. Civ. R. 7.1(e). Walker has not responded to the motion, and it is now ripe for decision. The court is deciding the motion based on defendants' brief and Walker's complaint, without oral argument.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

Defendants move under Rule 12(b)(6)[3] to dismiss Walker's claims related to Dail's death on the ground that Walker "has failed to plead facts necessary to establish that she or her minor children have standing to bring an action arising from Mr. Dail's death, and all of their claims should be dismissed." D. Br. (ECF No. 25) at 4,

To the extent that Walker alleges claims—in either an individual or representative capacity—under state law or 42 U.S.C. § 1983 based on Dail's wrongful death, the court agrees that she does not have statutory standing to pursue these claims. "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law

---

[3]"Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. § 1988(a)). "Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Id.* Walker has not plausibly alleged sufficient facts to enable the court to draw the reasonable inference that she has standing to bring claims under state law or under § 1983 based on Dail's allegedly wrongful death. The Texas Wrongful Death Statute provides: "[a]n action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code § 71.004(a). In her complaint, Walker alleges only that she is suing "individually and as mother of [Kyle and Kymari], minor heirs of the Estate of [Dail]." Compl. 1. She does not plead any facts that would enable the court to draw the reasonable inference that she is the surviving spouse, child, or parent of Dail or that the minors on whose behalf she sues—Kyle and Kymari—are the surviving children of Dail. Accordingly, to the extent that Walker brings claims based on the allegedly wrongful death of Dail, the court grants defendants' motion to dismiss these claims.

To the extent that Walker alleges claims under state law or 42 U.S.C. § 1983 based on the injuries Dail suffered prior to his death, it appears that Walker *does* have standing to sue, in a representative capacity, on behalf of her children Kyle and Kymari.[4] Under the

---

[4]Although defendants contend that "*all* of [Walker's] claims should be dismissed," D. Br. (ECF No. 25) at 4 (emphasis added), they do not challenge Walker's standing under the Texas Survival Statute to pursue the claims of Kyle and Kymari in a representative capacity.

Texas Survival Statute, "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person."  Tex. Civ. Prac. & Rem. Code Ann. § 71.021(b).  Walker alleges in her complaint that Kyle and Kymari are the heirs of Dail's estate.  But Walker has not plausibly pleaded that *she* is the heir, legal representative, or estate of Dail.  She therefore cannot pursue any of the survival claims alleged in the complaint in her individual capacity.

Accordingly, the court grants defendants' motion to dismiss Walker's claims (both individual-capacity and representative-capacity) to the extent they are based on Dail's wrongful death and to the extent Walker asserts them in her individual capacity.

IV

Defendants next move to dismiss Walker's *Monell*[5] claim against the DPD on the ground that the DPD is not a jural entity that can be sued.

A plaintiff cannot bring a civil rights action against a servient political agency or department, such as the DPD, unless the agency or department enjoys a separate and distinct legal existence.  *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991) (holding that a police department is not a jural entity).  In *Darby* the Fifth Circuit held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself."  *Darby*, 939 F.2d at 313.  "The burden of showing that the city or county department

---

[5]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978).

has the capacity to be sued rests on the plaintiff." *Cortes v. Havens*, 2014 WL 6861245, at *6 (N.D. Tex. Dec. 5, 2014) (Boyle, J.).   "However, if a plaintiff fails to allege or demonstrate that such defendant is a separate legal entity having jural authority, then claims against that entity 'should be dismissed as frivolous and for failing to state a claim.'" *Hutchinson v. Box*, 2010 WL 5830499, at *1 (E.D. Tex. Aug. 20, 2010) (citation omitted), *rec. adopted*, 2011 WL 839864 (E.D. Tex. Feb. 17, 2011).

Walker has not alleged that the DPD has the power to sue or be sued.  Nor has she responded to defendants' motion to dismiss her claims against the DPD on this ground. Accordingly, to the extent that Walker intends to bring any of her claims against the DPD, the court dismisses these claims.  *See, e.g.*, *Johnson v. Dall. City Police Dep't*, 2004 WL 2964968 at *2 (N.D. Tex. Dec. 15, 2004) (Sanderson, J.) ("Plaintiff has failed to show that the Dallas Police Department has ever been granted the capacity to sue or be sued . . . and, as such, it should be dismissed with prejudice."), *rec. adopted*, 2005 WL 119467 (N.D. Tex. Jan. 18, 2005) (Boyle, J.); *see also Boatwright v. Plumley*, 2020 WL 4550418, at *1 (N.D. Tex. June 25, 2020) (Rutherford, J.) ("Because the Dallas and Garland Police Departments are nonjural entities, Boatwright's claims against these defendants should be dismissed."), *rec. adopted sub nom., Boatwright v. Sadberry*, 2020 WL 4530368 (N.D. Tex. Aug. 5, 2020) (Lindsay, J.)*.*

V

Defendants next move to dismiss plaintiff's state-law claims as barred by the Texas Tort Claims Act ("TTCA").

A

The TTCA provides a limited waiver of sovereign and governmental immunity for certain tort claims, "allowing suits to be brought against governmental units only in certain, narrowly defined circumstances." *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) (citation omitted). The TTCA's waiver of immunity constitutes the "only . . . avenue for common-law recovery against the government" on a tort theory. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008).

The TTCA also contains an "election of remedies" provision that is designed to require "a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the [TTCA] or proceeding against the employee alone." *Id.* at 657 (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.106). "Because the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." *Id.* "Although recognized as a harsh grant of immunity, [Tex. Civ. Prac. & Rem. Code Ann. § 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dall. Indep. Sch. Dist.*, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (Fitzwater, J.) (internal quotation marks omitted), *aff'd*, 232 F.3d

- 8 -

210 (5th Cir. Aug. 23, 2000) (table).  Thus it "narrows the issues for trial and reduces delay and duplicative litigation costs." *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 657.  Under § 101.106(e), "[i]f a suit is filed under [the TTCA] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).  For purposes of § 101.106(e), "all tort theories alleged against a governmental unit" are assumed to be "under [the TTCA]."  *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d at 659.

B

In this case, Walker has sued the City and the DPD Officers "in [their] individual capacity and [their] official capacity as . . . employee[s] of the Dallas Police Department."[6] Compl. ¶¶ 8-10; *see also id.* ¶ 52 ("Defendants Hemm, Hoffman, and Piering individually as agents and/or employees of the City of Dallas and DPD, assaulted Kyle Dail."); *id.* ¶ 62 ("Defendants Hemm, Hoffman, and Piering individually and as an agents and/or employees of the City of Dallas and DPD, deprived Kyle Dail of his rights and privileges as a citizen of the United States and Defendant caused Kyle Dail to suffer injury and death.").  And the City seeks dismissal of the claims against the DPD Officers.  Accordingly, to the extent that the court has not already dismissed Walker's state-law claims asserted against the DPD Officers for the reasons explained above, *see supra* § III, the court dismisses the individual

---

[6]"Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer." *Franka v. Velasquez*, 332 S.W.3d 367, 382 (Tex. 2011).

capacity claims against the DPD Officers under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e).  *See, e.g.*, *Green v. City of Irving, Tex.*, 2009 WL 762202, at *1 (N.D. Tex. Mar. 24, 2009) (Fitzwater, C.J.) ("Plaintiffs' state-law claims brought against Officer McPherson under the Act are barred by Tex. Civ. Prac. & Rem. Code Ann. § 101.106 ([West] 2005) because plaintiffs also sue the City, his employer.").

C

The court also dismisses Walker's state-law claims against the City based on governmental immunity.

The TTCA expressly excludes intentional torts from any waiver of immunity.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort[.]"). Defendants argue that Walker has "unambiguously and repeatedly pled intentional conduct," D. Br. (ECF No. 25) at 7, citing Walker's allegations that the DPD Officers "committed an assault upon [Dail] when they intentionally, knowingly, and/or recklessly shot [him] causing severe bodily injury and death . . . [and] intentionally, knowingly, and/or recklessly sprayed OC spray at [him]," Compl. ¶¶ 48-49, and that the DPD Officers "intentionally maced" and "intentionally shot" Dail, *id.* ¶ 61.  Walker has not responded to defendants' argument in their motion to dismiss.

Defendants are correct that Walker's state-law claims are based on allegations of intentional conduct.  Accordingly, Walker's claims against the city for assault (Count II) and for "willful and wanton–survival" (Count III) are dismissed based on governmental

immunity.

## VI

Finally, defendants move to dismiss Walker's § 1983 claim asserted against the City on the ground that she has failed to adequately plead any of the elements of this claim.

## A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Walker adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances,

constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations omitted) (second alteration in original). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Walker must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall.*

*Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Walker adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Walker must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide

- 13 -

proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

B

Defendants maintain that Walker's conclusory allegations are insufficient to plead either a § 1983 policy or practice claim or a § 1983 claim based on a failure to train theory. The court agrees.

In support of her § 1983 claim against the City, Walker alleges:

> The actions of Defendants, which resulted in Kyle Dail's death, were done pursuant to one or more interrelated *de facto* as well as explicit policies, practices and/or customs of the Defendant, City of Dallas and DPD.
>
> Defendants City of Dallas and DPD, acting at the level of official policy, practice, and custom, with callous, conscious, unreasonable, and deliberate indifference to Kyle Dail's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed. At all times material to this Complaint City of Dallas and DPD, its

- 14 -

> Boards, its Personnel Divisions, their agents and/or officials had interrelated *de facto* policies, and customs which include, *inter alia*:
>
> > a.  Utilizing or condoning the use of excessive force;
> > b.  Failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control patrolmen and/or officers;
> > c.  Failing and refusing to correct, discipline, and follow up on the actions of Defendants Hemm, Hoffman, and Piering;
>
> All the policies set forth above were adopted, implemented, supplemented, reinforced, promulgated, and effected, as a further matter of custom, practice, and policy.  Said policies were also a driving force in Roderick Brooks' death by means and failure of the City to hire, train, discipline and supervise DPD officers.  By their deliberate indifference, Defendants City of Dallas and DPD implemented and encouraged policies, practices, and customs with deliberate indifference to the rights of citizens.
>
> Said interrelated policies, practices, and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference and were unreasonable; and encouraged, *inter alia*, the failure to adequately conduct investigatory detentions and lawful arrests.
>
> As a direct and proximate result of the acts and conduct of defendant, Kyle Dail suffered injury and death.

Compl. ¶¶ 85-89 (paragraph numbering omitted).  These conclusory allegations, which do little more than recite the elements of a § 1983 claim, are insufficient to plausibly allege the existence of any particular policy or custom of the City, a policymaker with respect to that policy or custom, or that any particular policy or custom of the City was the moving force behind the violation of Dail's constitutional rights.  Nor has Walker plausibly pleaded that the City failed to train its employees or that any such failure caused Dail's death.

- 15 -

Accordingly, the court grants defendants' motion to dismiss Walker's § 1983 claim asserted against the City.

## VII

Walker brings a § 1983 claim against the DPD Officers, in their individual capacities,[7] based, *inter alia*, on their alleged use of excessive force, in violation of Dail's Fourth and Fourteenth Amendment rights (Count I). Although defendants maintain that "all of [her] claims should be dismissed," D. Br. (ECF No. 25) at 4,[8] defendants do not otherwise move to dismiss Walker's remaining § 1983 individual-capacity claim against the DPD Officers (i.e., her claim brought in a representative capacity on behalf of Dail's minor heirs based on the constitutional injuries Dail suffered prior to his death). Accordingly, the court declines to dismiss this claim.

## VIII

The court grants Walker leave to replead.

_____

[7]Walker pleads this claim against the DPD Officers in their individual and official capacities. But a claim against the DPD Officers in their official capacities is "in all respects other than name" a suit against the City. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). And as explained above, *see supra* § VI, Walker has failed to plausibly allege a § 1983 claim against the City. Accordingly, because her official-capacity § 1983 claim against the DPD Officers is duplicative of her § 1983 claim against the City, the court dismisses this claim for the reasons explained.

[8]Defendants do this in the context of their contention that Walker lacks standing to bring an action arising from Dail's death.

> [I]n view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Because Walker has not stated that she cannot, or is unwilling to, cure the defects that the court has identified, the court grants her 28 days from the date this memorandum opinion and order is filed to file a first amended complaint.

\*   \*   \*

For the reasons explained, the court grants defendants' motion to dismiss as to all of Walker's claims other than her § 1983 claim, brought in a representative capacity, against the individual officers, in their individual capacities, based on the constitutional injuries that Dail suffered prior to his death, and grants Walker leave to replead.

**SO ORDERED**.

December 15, 2023.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 17 -