IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHAUNTE WALKER, Individually §<br>and as mother of Kyle Dail Jr and §<br>Kymari Dail minor heirs of the §<br>Estate of KYLE DAIL SR., deceased, §<br>  §<br>Plaintiff, §<br>  § Civil Action No. 3:23-CV-0391-D<br>VS. §<br>  §<br>CITY OF DALLAS, et al., §<br>  §<br>Defendants. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Shaunte Walker ("Walker") brings this action individually and as mother of Kyle Dail Jr. ("Kyle") and Kymari Dail ("Kymari"), the children and minor heirs of the estate of Kyle Dail Sr. ("Dail").[1] Walker sues the City of Dallas ("City") and three individual Dallas Police Department ("DPD") officers employed by the City, alleging claims under 42 U.S.C. § 1983 based on the officers' alleged use of excessive and illegal force that resulted in Dail's death. Defendants move under Fed. R. Civ. P. 12(b)(6) for partial dismissal of Walker's first amended complaint. For the reasons that follow, the court grants the motion in part and denies it in part.

___

[1] Normally, a minor's initials would be used in place of his name. *See* Fed. R. Civ. P. 5.2(a)(3). But plaintiffs have "waive[d] the protection of Rule 5.2(a) as to [their] own information by filing it without redaction and not under seal." Rule 5.2(h). The court will therefore refer to the minors by their names instead of their initials.

I

On July 27, 2022 an unnamed undercover DPD officer witnessed Dail making hand-to-hand drug sales in the parking lot of a convenience store ("Food Mart") before departing in a vehicle.[2] Unnamed officers followed Dail and, after witnessing a traffic violation, attempted to initiate a traffic stop, but the vehicle Dail was riding in did not stop. Although the officers gave chase, they ultimately lost track of Dail.

Around 11:35 p.m. defendants DPD Officers Thomas Hoffman ("Officer Hoffman"), Noah Hemm ("Officer Hemm"), and Michael Piering ("Officer Piering") (collectively, the "DPD Officers") witnessed Dail's vehicle return to the Food Mart and Dail enter the store. The DPD Officers followed Dail into the Food Mart and approached him from behind to take him into custody. The DPD Officers did not announce themselves, they repeatedly rammed Dail's head into a soft drink dispenser, and they sprayed him with mace. Dail attempted to comply with the DPD Officers' commands, but one officer began punching him unnecessarily. As the struggle continued, Dail disarmed himself by tossing his firearm to the ground. Several seconds later, Officer Hoffman shot Dail, who was unarmed. Dail was transported to a local hospital in critical condition and later died as a result of the gunshot wound he sustained at the Food Mart.

In February 2023 Walker filed the instant lawsuit against the DPD, the DPD Officers,

---

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the first amended complaint in the light most favorable to Walker, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Walker's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004); *see also infra* § II.

and the City alleging claims under 42 U.S.C. § 1983 and Texas law. Defendants moved to dismiss the complaint, and in *Walker v. City of Dallas* (*Walker I*), 2023 WL 8705657, at *8 (N.D. Tex. Dec. 15, 2023) (Fitzwater, J.), the court granted defendants' motion, dismissing all of Walker's claims other than her § 1983 claim, brought in a representative capacity, against the individual officers, in their individual capacities, based on the constitutional injuries that Dail suffered prior to his death. The court also granted Walker leave to file an amended complaint, which she did on January 12, 2024. Defendants now move under Rule 12(b)(6) for a partial dismissal of Walker's first amended complaint ("amended complaint"). Walker has not responded to the motion,[3] which the court is deciding based on defendants' brief and Walker's amended complaint, without oral argument.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[3]Walker's response to the motion was due on February 2, 2024. *See* N.D. Tex. Civ. R. 7.1(e).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

III

Defendants move to dismiss Walker's individual-capacity claims arising from Dail's death based on a lack of standing. As this court explained in *Walker I*:

> "Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits." *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing 42 U.S.C. § 1988(a)). "Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988." *Id*. Walker has not plausibly alleged sufficient facts to enable the court to draw the reasonable inference that she has standing to bring claims under state law or under § 1983 based on Dail's allegedly wrongful death. The Texas Wrongful Death Statute provides: "[a]n action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex. Civ. Prac. & Rem. Code § 71.004(a). [Walker] does not plead any facts that would enable the court to draw the reasonable inference that she is the surviving spouse, child, or parent of Dail.

*Walker I*, 2023 WL 8705657, at *2.

In the amended complaint, Walker alleges that she is suing "individually and as mother of [Kyle and Kymari], Children and Minor heirs of the Estate of [Dail]." Am. Compl. 1. She still does not allege that she is the surviving spouse, child, or parent of Dail. Accordingly, for the reasons explained in *Walker I*, the court grants defendants' motion to dismiss Walker's individual-capacity claims arising from Dail's death.

IV

Defendants move to dismiss, as duplicative, Walker's official-capacity claims asserted against the DPD Officers. Claims against government agents in their official capacities are duplicative when claims are made against the government entity. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity."). It is therefore appropriate in such circumstances for the court to dismiss the official-capacity claims. *See, e.g.*, *Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county). Accordingly, defendants' motion to dismiss is granted as to the official-capacity claims alleged against the DPD Officers.

V

Defendants move to dismiss Walker's excessive lethal force claim against Officers Hemm and Piering on the ground that Walker has admitted that Officers Hemm and Piering did not use lethal force against Dail. The court agrees. Walker specifically pleads in the

amended complaint that Officer Hoffman shot Dail, that "[n]one of the other officers pulled their firearms or fired at [Dail]," Am. Compl. ¶ 24, and that Dail "later died at the hospital due to the gunshot wound he suffered at the hands of Defendant Officer Hoffman," *id.* ¶ 25. Defendants are correct that these allegations clearly state that Officers Hemm and Piering did *not* use lethal force against Dail. Accordingly the court grants defendants' motion to dismiss Walker's § 1983 claim asserted against Officers Hemm and Piering to the extent that this claim is based on the use of excessive lethal force.[4]

VI

Defendants move to dismiss Walker's § 1983 claim asserted against the City on the ground that she has failed to adequately plead the elements of this claim.

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a

---

[4]Walker may still proceed on her individual-capacity claims against Officers Hemm and Piering to the extent that she alleges that these officers used excessive *non-lethal* force—i.e., by ramming Dail's head into a soft drink dispenser, spraying him with mace, and punching him unnecessarily, *see* Am. Compl. ¶ 21—if she has grounds to do so.

constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Walker adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations omitted) (second alteration in original). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Walker must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area

of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Walker adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Walker must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support

liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

Alternatively, a plaintiff may assert a failure-to-train theory of municipal liability. "Failure to train is a separate theory of municipal liability, but the same standard applies both to a failure to train claim and to a municipal liability claim." *Byers v. Navarro Cnty.*, 2012 WL 677203, at *16 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (citations omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000) (brackets omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390. "[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'" *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *City of Canton*, 489 U.S. at 388).

B

Defendants move to dismiss Walker's § 1983 claim against the City to the extent that

it is based on a written policy because the DPD's Use of Deadly Force Policy ("Deadly Force Policy") is not facially unconstitutional; Walker has not pleaded any policy that fits the description of a "completely subjective continuum of force policy that can be expressly avoided and which leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene," Ds. Br. (ECF No. 37) at 6 (quoting Am. Compl. ¶ 53(e)); and Walker has not otherwise identified an unconstitutional written policy.

"If an official policy itself violates federal law, or directs an employee to do so, then the policy is facially unconstitutional, and it necessarily follows . . . that a constitutional violation will most likely occur." *Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 308 (5th Cir. 2023) (ellipsis in original) (internal quotation marks and footnotes omitted). "When that happens, the facially unconstitutional policy's mere existence satisfies the moving-force requirement that is *Monell*'s third element." *Id.* (citing *Burge*, 336 F.3d at 370). "On the other hand, a 'facially innocuous policy will support liability' only if 'it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.'" *Id.* (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 558 (5th Cir. 2017)).

"An official, written policy is 'itself' unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Id.* at 309 (citing *Doe v. United States*, 831 F.3d 309, 318 (5th Cir. 2016)). Walker has not plausibly alleged that the Deadly Force Policy or any other written DPD policy affirmatively allows or compels unconstitutional conduct. According to the amended complaint, the Deadly Force Policy permits "only the degree of

- 10 -

force necessary to protect and preserve life," and permits the use of deadly force "with great restraint and as a last resort." Am. Compl. ¶ 39. It also requires that DPD officers avoid the use of deadly force if possible and "use reasonable alternatives if time and opportunities permit." *Id.* ¶ 40.

Walker alleges that the Deadly Force Policy is unconstitutional because it is "completely subjective," "leaves the use of excessive force exclusively to the unchecked discretion of officers on the scene," and permits officers to use deadly force based on their "individual judgment." *Id.* ¶ 53. But these allegations are insufficient to support a § 1983 claim based on a facially unconstitutional policy. This is because where "an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the policymaker's deliberate indifference." *Edwards*, 70 F.4th at 309; *see also Lance v. City of San Antonio*, ___ F.4th ___, 2024 WL 714327, at *15 (W.D. Tex. Feb. 20, 2024) ("If the ultimate factfinder determines Officer Noriega applied excessive force in shooting Lance, then Officer Noriega will have also violated the City's policy. Officer Noreiga's alleged abuse of discretion does not, however, give rise to municipal liability. A policymaker's 'deliberate indifference' is the *sine qua non* of municipal liability. Lance offers no evidence of the City's 'deliberate indifference' to officers abusing their discretion under the use of force policy."). Walker does not plausibly allege that, in adopting or maintaining the Deadly Force Policy, the City Council—the City's final policymaker, *see Pinedo v. City of Dallas, Tex.*, 2015 WL 221085,

at *5 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.)—acted with deliberate indifference. Her conclusory allegation that "[b]y their deliberate indifference, [the City and the DPD] implemented and encouraged policies, practices, and customs with deliberate indifference to the rights of citizens," Am. Compl. ¶ 54, is insufficient. Accordingly, the court grants the City's motion to dismiss Walker's *Monell* claim to the extent that it is based on a purportedly unconstitutional written policy.

C

Defendants move to dismiss Walker's § 1983 claim against the City to the extent that it is based on a widespread custom or practice because Walker's allegations regarding an unofficial custom of DPD officers using excessive force are conclusory; the charts Walker includes in the amended complaint, which are comprised of internal and external complaints of alleged violations of DPD rules, provide no context or insufficient factual content for the court to draw the reasonable inference that an official custom of police officers using excessive force existed at the time of the incident giving rise to Walker's claims; and even if the charts demonstrated violations of DPD rules, "a determination that an officer's conduct violated his department's internal rules or procedures is not evidence that the officer violated a constitutional right." Ds. Br. (ECF No. 37) at 11 (emphasis omitted) (quoting *Ross v. City of Dallas*, 2022 WL 992593, at *5 (N.D. Tex. Mar. 31, 2022) (Brown, J.)).[5]

---

[5]Defendants do not specifically move to dismiss Walker's custom-based § 1983 claim on any ground other than the absence of an adequately-pleaded "widespread custom or practice." Accordingly, the court does not evaluate whether the amended complaint adequately pleads the other elements of Walker's § 1983 claim against the City based on an

"An official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Covington v. City of Madisonville*, 812 Fed. Appx. 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A "pattern of conduct" is necessary when the municipal actors are not policymakers. *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.' A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (citations omitted). If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* at 850 (citation omitted).

In *Walker I* the court held that the conclusory allegations in the complaint, which "do little more than recite the elements of a § 1983 claim, are insufficient to plausibly allege the existence of any particular policy or custom of the City, a policymaker with respect to that policy or custom, or that any particular policy or custom of the City was the moving force

---

unconstitutional custom or practice.

behind the violation of Dail's constitutional rights." *Walker I*, 2023 WL 8705657, at *7. In the amended complaint, Walker alleges that the City and DPD "have a longstanding and historical record of external complaint allegations, inappropriate/unnecessary force investigations, and racial profiling complaints. There have been several incidents between officers and unarmed citizens that have resulted in the use of excessive and deadly force." Am. Compl. ¶ 35. She also includes three charts from the 2022 DPD Annual Report that show, *inter alia*, that in 2022 the DPD investigated 41 external complaint allegations regarding "inappropriate or unnecessary use of force" and sustained 7 of the internal and external complaints received regarding "inappropriate/unnecessary force." *Id.* These allegations are sufficient at the pleadings stage to allege that the DPD had a custom of "[u]tilizing or condoning the use of excessive force."[6] *Id.* ¶ 53(a).

### D

Defendants move to dismiss Walker's § 1983 claim against the City to the extent that it is based on inadequate hiring practices because Walker has not pleaded any facts to establish the required elements of an inadequate hiring practices-based *Monell* claim and "[t]here are no allegations whatsoever that describe the City's processes for hiring police officers or explain how those processes are constitutionally deficient or provided the 'moving force' behind any part of the incident involving [Dail]." Ds. Br. (ECF No. 37) at 12.

---

[6] The court's decision today is based on the allegations in the amended complaint. The court expresses no view on whether Walker will be able to prove at the summary judgment or trial stage that the DPD in fact had a custom of utilizing or condoning the use of excessive or deadly force.

Section 1983 claims against a municipality based on a hiring decision "pose the greatest risk that a municipality will be held liable for an injury that it did not cause." *Bd. of Cnty. Comm'rs*, 520 U.S. at 415. Accordingly, the court must adhere to "rigorous requirements of culpability and causation" to avoid essentially imposing *respondeat superior* liability on a municipality. *Id*. To hold a municipality liable for a hiring decision, the plaintiff must show that "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of the third party's federally protected right." *Id.* at 411. Further, there must be a finding that "*this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation must be strong." *Id.* at 412. Finally, it is not sufficient to show that the policymaker read the employee's record and hired the employee with knowledge of his background. *Id*. at 414. "Such a decision may reflect indifference to [the employee's] *record*, but what is required is deliberate indifference to a plaintiff's constitutional right." *Id*. at 414-15.

Aside from the conclusory allegation that "[s]aid policies were also a driving force in [Dail]'s death by means and failure of the City to hire, train, discipline and supervise DPD officers," Am. Compl. ¶ 54, Walker has failed to plead any of the required elements of a § 1983 claim based on inadequate hiring practices. Accordingly, the court grants defendants' motion to dismiss this claim.

E

Defendants move to dismiss Walker's § 1983 claim to the extent that it is based on a failure to train or supervise, contending that Walker has failed to allege how the DPD's training program was defective; Walker has not alleged any facts that would allow the court to infer that the use of force training provided to DPD officers was inadequate or deficient or that the City's policymakers were deliberately indifferent to the need for better training based on obviousness or its awareness of past similar unconstitutional conduct; the chart in the amended complaint "demonstrates the opposite of Plaintiff's claims by showing that DPD investigates excessive force allegations and imposes discipline where warranted," Ds. Br. (ECF No. 37) at 15 (citing Am. Compl. at 8); and the amended complaint offers only one example of a purported failure to discipline—the fact that the Defendant Officers have not been fired—but this single supposed example cannot show a preexisting pattern because it necessarily occurred *after* the incident.

The court grants defendants' motion to dismiss Walker's § 1983 claim to the extent that it is based on an alleged failure to train or supervise. "[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to supervise] can be the basis for liability under § 1983." *City of Canton*, 489 U.S. at 387. To succeed on a failure-to-train or failure-to-supervise claim, a plaintiff must be able to show: (1) the training procedures or supervision of employees was inadequate, (2) a causal link between such failure and the violation of plaintiff's constitutional rights, and (3) such failure amounts to deliberate indifference. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citation omitted).

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (brackets and citation omitted). Thus when a municipality's policymakers are on actual or constructive notice that a particular omission in their training program causes municipal employees to violate citizens' constitutional rights, the municipality may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id*.

> Regarding the alleged failure to train/supervise, Walker alleges that
>
>> [e]ach officer completed the Basic Peace Officer Course at the Dallas Police Academy and had a combined 10,723 hours of training that consisted of total career/professional hours and total TCOLE Course Hours[;]
>>
>> [o]f the combined 10,723 hours of training for the Defendant officers, only 28 of those hours were committed to learning de-escalation techniques[;]
>>
>> [the City] and DPD . . . had interrelated *de facto* policies, and customs which include, *inter alia*, . . . failing to properly train, supervise, discipline, transfer, monitor, counsel and otherwise control patrolmen and/or officers. . . [and inadequate] policies, training, supervision, or discipline relating to the use of excessive force[;]
>>
>> [s]aid policies were also a driving force in [Dail]'s death by means and failure of the City to hire, train, discipline and supervise DPD officers[;]
>>
>> [and b]y their deliberate indifference [the City and DPD] implemented and encouraged policies, practices, and customs with deliberate indifference to the rights of citizens[.]

Am. Compl. ¶¶ 28, 32, 53, 54 (paragraph numbering omitted). The only allegation that is not

conclusory and a mere recitation of the elements of Walker's § 1983 claim is that the DPD officers received only 28 hours of training on de-escalation techniques. But even if the court accepts this allegation as true and views it favorably to Walker, it is alone insufficient to plausibly allege a § 1983 claim based on a failure to train or supervise. Walker does not allege any specific inadequacy in the training of DPD officers; she does not plausibly plead that a failure to train or supervise the DPD Officers was the moving force in causing Dail's constitutional injury[7]; and she does not allege, other than in conclusory terms, that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of DPD officers.

Accordingly, the court grants defendants' motion to dismiss Walker's § 1983 claim against the City to the extent that it is based on an alleged failure to train or supervise.

\* \* \*

For the reasons explained, the court grants in part and denies in part defendants' joint motion for partial dismissal of Walker's amended complaint.

**SO ORDERED**.

May 28, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[7]Walker alleges that the DPD "fail[ed] and refus[ed] to correct, discipline, and follow up on the actions of Defendants Hemm, Hoffman, and Piering," Am. Compl. ¶ 53(c), but these alleged failures occurred *after* the incident at issue in this case, and so could not have been a moving force behind Dail's constitutional injury.