IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHAUNTE WALKER, Individually          §
and as mother of Kyle Dail Jr and     §
Kymari Dail minor heirs of the        §
Estate of KYLE DAIL SR., deceased,    §
                                      §
              Plaintiff,              §
                                      §    Civil Action No. 3:23-CV-0391-D
VS.                                   §
                                      §
CITY OF DALLAS, et al.,               §
                                      §
              Defendants.             §

MEMORANDUM OPINION
AND ORDER

Plaintiff Shaunte Walker ("Walker"), individually and as mother of the children and

minor heirs of the estate of Kyle Dail Sr. ("Dail"), sues the City of Dallas (the "City") and

three individual Dallas Police Department ("DPD") officers, asserting claims under 42

U.S.C. § 1983 for alleged violations of Dail's Fourth and Fourteenth Amendment rights.

Defendants Thomas Hoffman ("Officer Hoffman"), Michael Piering ("Officer Piering"), and

Noah Hemm ("Officer Hemm") (collectively, the "Defendant Officers") move for summary

judgment based on the defense of qualified immunity. For the reasons that follow, the court

grants their motion and dismisses Walker's claims against the Defendant Officers by Fed.

R. Civ. P. 54(b) final judgment filed today.

I

On July 27, 2022 a covert officer who was part of DPD's Northeast Crime Response

Team was conducting surveillance at a gas station and convenience store ("Convenience

Store") in connection with a drug trafficking investigation when he witnessed Dail engaging in what he believed were hand-to-hand drug transactions.[1]  He informed the Defendant Officers, who were stationed nearby, and began to follow Dail's car with the intention of making a traffic stop.  Officer Hemm joined in the pursuit.  When Officer Hemm spotted Dail's vehicle, he activated his lights and siren in an attempt to initiate a traffic stop, but Dail continued driving, and the officers eventually lost track of his vehicle.

At approximately 11:30 p.m., Dail returned to the Convenience Store and went inside. The covert officer, who had returned to the Convenience Store and resumed surveillance, conveyed this information to the Defendant Officers, provided them with a description of Dail's clothing, and asked the Defendant Officers to enter the Convenience Store and arrest Dail.

When the Defendant Officers arrived at the Convenience Store, they spotted Dail standing at the far end of the left aisle with his back toward them.  Officer Piering approached down the left aisle with Officer Hemm trailing a few feet behind him, and Officer Hoffman approached via the right aisle.  The Defendant Officers did not announce their presence, allegedly out of concern that Dail would flee again before they could detain him.

---

[1]In deciding the Defendant Officers' summary judgment motion, the court views the evidence in the light most favorable to Walker as the summary judgment nonmovant and draws all reasonable inferences in her favor.  *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Officer Piering reached Dail first and grabbed him from behind. The Defendant Officers ordered Dail to stop moving, put his hands behind his back, and give them his hands, but Dail did not comply. Instead, he flailed, pulled his hands away, and and fought against the Defendant Officers while repeatedly yelling, "I'm not moving!" Ds. App. Ex. 3 (ECF No. 48)[2] at 23:40:48-23:41:02. A struggle ensued during which the Defendant Officers pressed Dail against a soda dispenser and Officer Hoffman struck the side of Dail's head with a closed fist. Dail continued to resist, moving himself and the Defendant Officers several feet up the aisle before crashing into a display, scattering merchandise all over the floor.

Officer Piering disengaged, moved a few steps up the aisle, drew his taser and yelled, "I will tase you! I will tase you! Give them your hands!" Ds. App. Ex. 5 (ECF No. 48) at 23:41:06-10. Officer Piering then saw Dail reach into the front of his waistband and pull out a pistol. Officer Piering screamed, "Gun! Gun! Gun!" as he dropped his taser, drew his own pistol, and pointed it at Dail. Ds. App. Ex. 5 (ECF No. 48) at 23:41:10-13. Officer Hoffman heard Piering shout "Gun!" and, at that moment, observed Dail holding a pistol in a shooting grasp and raising it up toward Officer Hoffman's head. Officer Hoffman believed Dail was going to shoot him and his fellow officers, so he released Dail, drew his service weapon, and fired three times, fatally wounding Dail. Unbeknownst to Officer Hoffman, as soon as he released Dail to draw his service weapon, Dail threw his pistol over the display into the next aisle.

---

[2]Citations to video exhibits contained in ECF No. 48 are to a flash drive that the Defendant Officers manually filed.

After the Defendant Officers located Dail's gun, they began to render aid to Dail until paramedics arrived. Dail was transported to a local hospital where he died as a result of a gunshot wound to his head.

In February 2023 Walker filed the instant lawsuit against the City, DPD,[3] and the Defendant Officers. In her first amended complaint, which is her operative pleading, Walker alleges a claim under 42 U.S.C. § 1983 against the Defendant Officers[4] for using excessive force, in violation of Dail's Fourth and Fourteenth Amendment[5] rights. She also brings a claim against the City[6] under 42 U.S.C. §§ 1983 and 1988/*Monell*.[7] The Defendant Officers

---

[3]In *Walker v. City of Dallas*, 2023 WL 8705657, at *3 (N.D. Tex. Dec. 15, 2023) (Fitzwater, J.), the court dismissed Walker's claims against DPD.

[4]Walker brought this claim against the Defendant Officers in their individual and official capacities. In *Walker v. City of Dallas* (*Walker II*), 2024 WL 2734951 (N.D. Tex. May 28, 2024) (Fitzwater, J.), the court dismissed, as duplicative, Walker's official-capacity claims against these defendants. *Id.* at *2.

[5]It is undisputed that the Defendant Officers seized Dail under the *Fourth* Amendment. To the extent that Walker alleges a claim against the Defendant Officers based on the *Fourteenth* Amendment, the court dismisses this claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("[We] hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[, n]ot the more generalized notion of 'substantive due process.'"); *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 278 (5th Cir. 2015) ("While substantive due process applies to some police conduct, the Supreme Court has refused to look beyond the Fourth Amendment when the police 'seize' a suspect." (citation omitted)).

[6]The court in *Walker II* dismissed Walker's § 1983 claim against the City to the extent that it is based on a purportedly unconstitutional written policy, inadequate hiring practices, and an alleged failure to train or supervise. *Walker II*, 2024 WL 2734951, at *5, 7-8.

[7]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, (1978).

move for summary judgment based on qualified immunity.[8]  Walker opposes the motion.

The court is deciding the motion on the briefs, without oral argument.

## II

When a summary judgment movant will not have the burden of proof on a claim at

trial, he can obtain summary judgment by pointing the court to the absence of evidence on

any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986).  Once he does so, the nonmovant must go beyond her pleadings and designate

specific facts demonstrating that there is a genuine issue for trial.  *See id.* at 324; *Little v.

Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is

genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmovant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's

failure to produce proof as to any essential element renders all other facts immaterial.  *See

TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater,

J.).  Summary judgment is mandatory where the nonmovant fails to meet this burden.  *Little*,

37 F.3d at 1076.

When qualified immunity has been raised, "[t]he moving party is not required to meet

[his] summary judgment burden for a claim of immunity."  *Hathaway v. Bazany*, 507 F.3d

312, 319 (5th Cir. 2007) (citation omitted).  Rather, the movant need only plead his

---

[8]The Defendant Officers also move for a protective order relieving them of any obligation to respond to Walker's requests for written discovery.  Because the court is today granting summary judgment dismissing Walker's action against the Defendant Officers, the court denies their motion for a protective order without prejudice as moot.

good-faith entitlement to qualified immunity, whereupon "the burden shifts to the plaintiff to rebut it." *Id.* (emphasis and citation omitted); *see also Gates v. Tex. Dep't of Protective & Reg. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when government official pleads qualified immunity, plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct"). Once qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).[9]

III

Qualified immunity jurisprudence is well settled. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30 (citing *Butz v. Economou*, 438 U.S. 478, 504 (1978)); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999). "Qualified immunity gives

---

[9]In her response brief, Walker fails to acknowledge the burden-shifting effect of qualified immunity. Because the Defendant Officers have asserted in their summary judgment motion their entitlement to qualified immunity, the burden has shifted to Walker to demonstrate that they are *not* entitled to qualified immunity. *See, e.g.*, *McClendon*, 305 F.3d at 323.

- 6 -

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (internal quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"To decide whether defendants are entitled to qualified immunity, the court must first answer the threshold question whether, taken in the light most favorable to plaintiff[] as the part[y] asserting the injuries, the facts [she has] alleged show that defendants' conduct violated a constitutional right." *Ellis v. Crawford*, 2005 WL 525406, at *3 (N.D. Tex. Mar. 3, 2005) (Fitzwater, J.) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."))[10]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.  Finally, "[e]ven if the government official's conduct violates a clearly established right, the official is

---

[10]*Saucier*'s two-step procedure for determining qualified immunity is no longer mandatory. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Courts are free to consider *Saucier*'s second prong without first deciding whether the facts show a constitutional violation. *Id*.  The "decision does not prevent the lower courts from following the *Saucier* procedure; it simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id*. at 242.

nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (citing *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (en banc)). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992) (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). "'The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the' plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)).

IV

The court begins with the Defendant Officers' motion for summary judgment on Walker's Fourth Amendment excessive force claim based on the use of non-lethal force.

A

"The Fourth Amendment's protection against unreasonable seizures of the person has been applied in causes of action under 42 U.S.C. § 1983 to impose liability on police officers who use excessive force against citizens." *Collier v. Montgomery*, 569 F.3d 214, 218 n.12 (5th Cir. 2009) (citing *Colston v. Barnhart*, 130 F.3d 96, 102 (5th Cir. 1997)). "To establish an excessive force claim, a plaintiff must prove '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *McVae v. Perez*, 120 F.4th 487, 492 (5th Cir.

2024) (quoting *Jackson v. Gautreaux*, 3 F.4th 182, 186 (5th Cir. 2021).

The court will assume *arguendo* that Dail suffered an injury when he was struck in the head with a closed fist, pressed against a soda dispenser, and "subjected to escalating force despite the absence of an immediate threat." P. Br. (ECF No. 52) at 15. "The relevant question in this case is whether the force was 'clearly excessive' or 'clearly unreasonable.'" *Ramire v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). In assessing the reasonableness of the use of force, the court must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham*, 490 U.S. at 396). This is an objective standard: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396-97.

B

The Defendant Officers maintain that their use of non-lethal force was reasonable. They contend that, before arresting Dail, they knew, *inter alia*, that he was a suspected drug dealer; that drug traffickers commonly and frequently carry guns and are willing to use them; that Dail had fled from a traffic stop just one hour earlier; and that Dail might try to flee or fight once he became aware of their presence. The Defendant Officers also posit that Officer Piering approached Dail from behind and grabbed him without first announcing his office to avoid giving Dail the opportunity to flee, and that, from this initial seizure until the moment Dail pulled a gun from his waistband, the Defendant Officers continuously grasped his arms and tried to pull his hands behind his back while giving him commands not to move and to give them his hands for handcuffing, but that Dail "intentionally and forcefully obstructed the officers' efforts by thrashing around, dragging them into store displays, and pulling his hands away to prevent being handcuffed," Ds. Br. (ECF No. 45) at 18. Based on these facts, all of which are corroborated by video or other evidence in the summary judgement record,[11] the Defendant Officers contend that all three of the *Graham* factors are

---

[11]As the Defendant Officers point out, video evidence has a special status at the summary judgment stage.

> [W]e assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene. When one party's description of the facts is discredited by the record, we need not take his word for it but should view the facts in the light depicted by the videotape.

*Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (internal quotation marks and citations

satisfied: Dail committed several serious crimes (including felonies) in their presence, he

likely posed an immediate threat to the safety of the officers or others, and he actively

resisted arrest or attempted to evade arrest by flight.

Walker responds that the video evidence demonstrates the "excessive nature" of

defendants' use of force:

> Video footage shows Dail pressed against a soda dispenser and
> struck in the head despite no visible weapon or immediate
> threat. Defendants fail to justify the use of such force given that
> Dail's alleged resistance consisted of pulling away and moving
> his arms—a response consistent with defensive reflexes rather
> than active aggression.

P. Br. (ECF No. 52) at 16. She contends that the record lacks evidence that Dail posed an

imminent threat to officer safety and that "[t]he absence of a visible weapon at the time of

the head strike underscores the unreasonableness of the force used," *id.*; that the alleged

severity of Dail's crimes is diminished by the lack of any immediate or active criminal

conduct at the time of the physical altercation; that "[w]ithout a clear and present danger to

officers or bystanders, escalating the use of force—such as striking Dail in the head—cannot

be justified solely on the basis of past crimes," *id.* at 17; that Dail's resistance consisted of

pulling his arms away and moving his body defensively, which do not constitute an

immediate threat under binding precedent; and that although some level of force may be

appropriate in effectuating an arrest, the escalation to head strikes and pressing Dail against

---

omitted) (first quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011), then
quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

the soda dispenser was disproportionate to the situation.

C

The court holds that, based on the summary judgment evidence, a reasonable jury could not find that the Defendant Officers' use of non-lethal force in this case—i.e., pressing Dail against a soda dispenser and striking him in the head—was unreasonable under the circumstances. "A suspect's active resistance is a key factor in the Fourth Amendment's 'objective reasonableness' test." *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015) (citing *Graham*, 490 U.S. at 396). And this circuit's "qualified immunity jurisprudence is filled with cases recognizing the need for officers to use reasonable force to subdue and handcuff suspects who strike them or are otherwise resisting." *Id.* Although "the force calculus changes substantially once that resistence ends," *id*. (citing *Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006)), conclusive video evidence in this case[12] demonstrates that Dail's active resistance had not ended by the time the Defendant Officers used non-lethal force in their attempt to subdue him.

The events depicted by video evidence unfold rapidly over a span of only 29 seconds.

_____

[12]The qualified immunity inquiry at this stage requires that the court "accept the plaintiff's version of the facts (to the extent reflected by proper summary judgment evidence) as true." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004). But the only evidence before the court that supports any version of the use-of-force incident is the video evidence submitted by the Defendant Officers. Accordingly, "the version of events depicted by the video[s] determines, for present purposes, whether any particular officer defendant violated [Dail]'s constitutional right to be free from excessive force." *Hutcheson v. Dallas County, Tex.*, 2020 WL 1692950, at *15 (N.D. Tex. Apr. 7, 2020) (Horan, J.), *aff'd*, 994 F.3d 477 (5th Cir. 2021).

While Dail is standing in the back of the Convenience Store with his back to the Defendant Officers, Officer Piering makes contact with Dail, grabbing him from behind.[13] The Defendant Officers command Dail to give them his hands, but Dail pulls his hands away, fights against the Defendant Officers, and repeatedly yells, "I'm not moving!" Ds. App. Ex. 5 (ECF No. 48) at 23:40:44-23:41:10; Ds. App. Ex. 3 (ECF No. 48) at 23:40:48-23:41:02. Dail then twists away from the Defendant Officers toward a soda dispenser on the far side of the aisle. Officer Piering presses Dail against the soda dispenser for leverage, and, seconds later, Officer Hoffman strikes the side of Dail's head with a closed fist. Dail continues to resist, moving himself and the Defendant Officers several feet up the aisle before crashing into a display, scattering merchandise all over the soda-slicked floor. In her summary judgment response, Walker characterizes Dail's conduct as "defensive in nature and insufficient to warrant escalating force." P. Br. (ECF No. 52) at 18. But the video evidence clearly depicts Dail thrashing and fighting so vigorously that three officers are unable to subdue him, throwing himself and the officers into product displays on both sides

---

[13]In her response, Walker contends that Officer Piering's grabbing Dail from behind "without an announcement or justification . . . escalated the situation unnecessarily and violated [Dail]'s Fourth Amendment right to be free from unreasonable seizure." P. Br. (ECF No. 52) at 7. She also contends that the Defendant Officers' "decision to apprehend [Dail] inside the store without clear evidence of a crime violated his Fourth Amendment rights against unreasonable seizure." *Id.* at 6. But Walker has not pleaded a claim for the violation of Dail's Fourth Amendment right to be free from unreasonable seizures, and she cannot raise it for the first time in her summary judgment response. *See, e.g.*, *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990))).

of the aisle.  As the Defendant Officers point out, "[a]t no point in the video does Dail surrender, cease resisting to allow handcuffing, or act in a manner 'consistent with defensive reflexes rather than active aggression.'"  Ds. Reply. (ECF No. 55) at 5 (quoting P. Br. (ECF No. 52) at 16).  To the contrary, Dail was actively resisting at the time the Defendant Officers used non-lethal force to subdue him.  *See Graham*, 490 U.S. at 396.

A reasonable jury could not find that it was unreasonable for the Defendant Officers to press Dail against the soda dispenser or strike his head while he was actively resisting their attempt to arrest him.  Video evidence conclusively establishes that, in the 29 seconds that followed Officer Piering's initial contact with Dail, it was Dail, *not* the Defendant Officers, who escalated the situation by refusing to comply with the Defendant Officers' commands and attempts to handcuff him.

Because Walker has not created a genuine issue of material fact on the question whether the Defendant Officers' use of non-lethal force was reasonable under the circumstances, the court concludes that the Defendant Officers are entitled to qualified immunity based on the first prong of the qualified immunity analysis.

## D

In the alternative, the court holds that the Defendant Officers are entitled to qualified immunity under the "clearly established" prong of the qualified immunity analysis.

### 1

Under the second prong of the qualified immunity analysis, courts consider "whether the defendant's conduct was objectively reasonable in light of the clearly established law at

the time of the incident." *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) (citation omitted); *see also Wood v. Moss*, 572 U.S. 744, 758 (2014) ("The 'dispositive inquiry,' we have said, 'is whether it would have been clear to a reasonable officer' in the [defendants'] position 'that [their] conduct was unlawful in the situation [they] confronted.'" (some alterations in original, some brackets omitted) (quoting *Saucier*, 533 U.S. at 202)).  To make this determination, the court must

> ask whether the law so clearly and unambiguously prohibited [the defendants'] conduct that *every* reasonable official would understand that what [they are] doing violates the law.  To answer that question in the affirmative, [the court] must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotation marks, footnotes, and some brackets omitted) (quoting *al-Kidd*, 563 U.S. at 741).  While "a case directly on point" is not required for the court to conclude that the law is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *al-Kidd*, 563 U.S. at 741.  Moreover, a court may not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (internal quotation marks and citation omitted).  "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then

at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004)
(en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

2

Walker has failed to point to any controlling authority that would have put the
Defendant Officers on notice that pressing Dail into a soda dispenser and striking his head
with a closed fist while they attempted to control and handcuff him constituted an objectively
unreasonable use of force in violation of Dail's Fourteenth Amendment Rights.

In the context of her argument that the Defendant Officers' use of non-lethal force was
unreasonable,[14] Walker relies on several cases that are factually distinguishable.  She first
cites *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012), for the proposition that "tasing and
striking a suspect who resisted handcuffing by pulling his arms away [is] excessive and
unconstitutional." P. Br. (ECF No. 52) at 16.  But in *Newman* there was evidence that police
officers had struck the plaintiff 13 times with a baton and had tased him—force that is much
greater than the non-lethal force used in this case—even though he "was not given any
commands with which he failed to comply." *Newman*, 703 F.3d at 760.  In this case, Officer
Hoffman struck Dail one time after he failed to comply with commands to give the officers
his hands and while he was actively and physically resisting the Defendant Officers' attempts
to subdue him.

---

[14]Walker does not directly address the "clearly established" prong of the qualified
immunity analysis in the context of her Fourth Amendment claim based on the use of non-
lethal force.

- 16 -

Walker also cites *Trammel v. Fruge*, 868 F.3d 332, 341 (5th Cir. 2017), arguing that "physical force is not justified when an individual offers minimal resistance and does not pose a threat." P. Br. (ECF No. 52) at 16. But *Trammel* is also distinguishable. In describing the plaintiff's conduct, the *Trammel* panel explained that his

> only physical resistance prior to being tackled was his attempt to pull his arm away. In fact, the dash cam footage reveals that Trammel did not even use much force in pulling away from the officers; although Trammel can clearly be seen moving his arm in the opposite direction from Officer Fruge, he is only able to move it away by a few inches such that the officer's hand never lost contact with Trammel's arm. *It also appears that Officer Fruge himself was not pulled forward*. Trammel was neither aggressive nor violent toward the officers prior to being tackled. Thus . . . we conclude that a reasonable jury could conclude that the officers' use of force was clearly excessive to the circumstances.

*Id.* at 341-42 (emphasis added). In contrast, in the present case, the evidence shows Dail pulling both of his arms forward, thrashing his body in such a way that three officers are unable to subdue him, and throwing himself *and the officers* into product displays on both sides of the aisle. Dail's conduct, which is much more aggressive and constitutes active resistance to the Defendant Officers, is markedly different from the passive pulling away of an arm that the *Trammel* panel describes. Accordingly, *Trammel* would not have put the Defendant Officers on notice that their use of non-lethal force in this case was clearly excessive.

Finally, Walker cites *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008), to argue that "force [is] excessive where a restrained suspect pose[s] no clear danger despite minimal resistance."

P. Br. (ECF No. 52) at 17.  But *Bush* likewise would not have put the Defendant Officers on notice that their use of non-lethal force was clearly excessive under the circumstances.  In *Bush* there was evidence that the defendant officers "forcefully slammed" the plaintiff's face into a vehicle, injuring her jaw and breaking two of her teeth, "when [she] was handcuffed and subdued."  *Id.* at 501.  But as is evident from the surveillance and body-worn camera videos in the present case, Dail was neither handcuffed nor subdued at the time the Defendant Officers pressed him against the soda dispenser and struck him in the head.

None of the other cases that Walker cites in her response brief is sufficiently similar to the instant case to put the Defendant Officers on notice that their conduct violated clearly established law.  Accordingly, the court holds, in the alternative, that under the second step of the qualified immunity analysis, the Defendant Officers are entitled to qualified immunity as to Walker's § 1983 excessive force claim based on the use of non-lethal force.

V

The court now turns to Walker's excessive force claim based on Officer Hoffman's use of deadly force, beginning with the first prong of the qualified immunity analysis—i.e., whether Officer Hoffman's use of deadly force violated Dail's Fourth Amendment rights.

A

"An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others."  *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).  And "if the officer believes the suspect has a gun, the calculation changes—*even if there was never, in*

*fact, a gun.*" *Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) (emphasis added).  Uses of force may be reasonable when the officer could reasonably believe the suspect was reaching for or had a gun.  *See, e.g.*, *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 385 (5th Cir. 2009) ("[T]his court has upheld the use of deadly force where a suspect moved out of the officer's line of sight and could have reasonably been interpreted as reaching for a weapon.");  *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991) (police did not use excessive force when a decedent repeatedly refused to keep hands raised and appeared to be reaching for an object, despite the "fact that [the decedent] *was actually unarmed.*" (emphasis added)).

B

Walker contends that the surveillance footage and body-worn camera evidence present genuine disputes of material fact as to whether Officer Hoffman reasonably believed that Dail posed an imminent threat of serious harm at the time Officer Hoffman discharged his weapon.  She maintains that

> [w]hile the defendants rely on surveillance and body-worn camera footage, these exhibits do not unequivocally demonstrate that Dail posed an immediate threat when Officer Hoffman fired his weapon.  Although Officer Hoffman may have seen Dail initially raise the gun, subsequent video evidence shows Dail transferring the gun to his left hand and flinging it away from the officers.  The timeline of these events—occurring within mere seconds—raises a material dispute as to whether Dail still constituted a threat at the precise moment Officer Hoffman decided to use deadly force.

P. Br. (ECF No. 52) at 22.  The court disagrees.  Whether Dail was *in fact* aiming a gun at

- 19 -

Officer Hoffman at the time that Officer Hoffman fired his weapon "does not matter—binding caselaw demonstrates that what matters is whether [Officer Hoffman] could *reasonably believe* that [Dail] was reaching for or had a gun." *Winder v. Gallardo*, 118 F.4th 638, 646 (5th Cir. 2024) (citing *Ontiveros*, 564 F.3d at 385).

A reasonable officer in Officer Hoffman's position could have reasonably believed, in the seconds before he fired his weapon, that Dail had a gun and "pose[d] a threat of serious harm to [him] or to others." *Manis*, 585 F.3d at 843. The Defendant Officers have produced evidence that Officer Hoffman saw the gun when Dail "held the pistol by the grip in a shooting grasp as he raised it up and in the direction of [Officer Hoffman's] head." Ds. App. (ECF No. 46) at 3. This moment is visible in the Defendant Officers' surveillance video screenshot, in which the black handgun in Dail's right hand is visible against the backdrop of a white box sitting on the counter next to the soda dispenser. In addition, Officer Hoffman avers in his affidavit that he

> believed the suspect was going to shoot and kill me and my fellow officers. I released my grip on the suspect and drew my pistol and fired at the suspect in defense of my life and the lives of my fellow officers. The suspect slumped down, and I stopped firing. I continued to point my pistol at the suspect and moved the suspect's arm attempting to locate the pistol which I believed he still had.

*Id.* Walker adduces no evidence to the contrary.

Although the surveillance video in fact shows Dail flinging his gun in the direction of Officer Piering in the seconds before Officer Hoffman fired his weapon, this video was captured by a *ceiling camera*—a bird's-eye view unavailable to Officer Hoffman. Dail's act

- 20 -

of throwing the gun is not visible in any of the footage from the officers' body-worn cameras. And Walker has not produced *any* evidence that would enable a reasonable jury to find that Officer Hoffman knew or believed that Dail had surrendered his gun at the moment he fired the fatal shots. The surveillance video shows that Officer Hoffman was standing behind and to the right of Dail and was in the process of drawing his service weapon from its holster at the moment Dail threw his gun. And Walker acknowledges that Officer Hoffman was "[unable] to directly observe Dail's final actions, including the throwing of the gun." P. Br. (ECF No. 52) at 20.

A reasonable jury could not find that Officer Hoffman's use of deadly force under the circumstances was unreasonable. The undisputed summary judgment evidence establishes that, over the span of two seconds, Officer Hoffman saw Dail with a gun in his hand, heard Officer Piering shout "Gun!" and fired his weapon at Dail. Even if Walker is correct that "Dail was attempting to surrender or otherwise disarm himself," P. Br. (ECF No. 52) at 20, Walker has not produced any proof that would permit the reasonable conclusion that, at the moment Officer Hoffman shot Dail, *Officer Hoffman* had knowledge of this fact.

As stated above, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. A reasonable officer in Officer Hoffman's position could have reasonably believed that, when Dail pulled out his gun, he "pose[d] a threat of serious harm to [Officer Hoffman] or to others." *Manis*, 585 F.3d at 843. Accordingly, his use of deadly force was neither excessive nor unreasonable under binding Fifth Circuit

- 21 -

authority.

Because Walker has failed to raise a genuine issue of material fact on the question whether Officer Hoffman's use of deadly force violated Dail's Fourth Amendment rights, the court grants the Defendant Officers' motion for summary judgment on this claim.[15]

\* \* \*

Accordingly, for the reasons explained, the court grants the Defendant Officers' motion for summary judgment and dismisses Walker's action against them by Rule 54(b) final judgment filed today.

**SO ORDERED**.

February 4, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

---

[15]In her summary judgment response, Walker contends that "[f]ollowing the shooting, [Dail] lay unresponsive on the floor.  Defendant Officers delayed providing medical aid, instead prioritizing the recovery of the discarded firearm.  This delay violated [Dail]'s Fourteenth Amendment right to due process by denying him timely and appropriate medical attention."  P. Br. (ECF 52) at 8.  But Walker has not pleaded a Fourteenth Amendment due process claim based on the Defendant Officers' delay in providing medical care to Dail, and, as stated above, *see supra* note 13, she cannot raise such a claim for the first time in her summary judgment response.  *See, e.g.*, *Cutrera*, 429 F.3d at 113.